**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Lawrence LOMBARDO a/k/a Larry
Lombardo, Defendant–
Appellant.**

**No. 93–4733
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 18, 1994.

Marcia G. Shein, Atlanta, GA, for appellant.

Robert Lehner, U.S. Atty., Miami, FL, for appellee.

Before HATCHETT, EDMONDSON and CARNES, Circuit Judges.

PER CURIAM:

■ Lawrence Lombardo pleaded guilty to twenty-one counts of conspiracy, loan sharking, and mail fraud. In addition to a four-and-one-half year prison sentence, the district court fined Lombardo $100,000 and ordered him to pay restitution of $400,000 to one of his victims. Lombardo appeals the fine and restitution portions of his sentence. We review for clear error the district court's determination of the appropriate fine. *United States v. Rowland,* 906 F.2d 621, 623 (11th Cir.1990). We review *de novo* the legality of the district court's order of restitution. *United States v. Cobbs,* 967 F.2d 1555, 1556 (11th Cir.1992).

The imposition of a fine is mandatory unless "the defendant establishes that he is unable to pay and is not likely to become able to pay." United States Sentencing Guidelines § 5E1.2(a) (1992). Once the court determines that a fine is appropriate, the Sentencing Guidelines require the court to consider seven factors in setting the amount of the fine, including the evidence presented as to the defendant's ability to pay. U.S.S.G. § 5E1.2(d) (1992).

Lombardo maintains that the record establishes that he is currently unable to pay the fine and that he has a "total lack" of future earning capacity. Lombardo argues that the presentencing report ("PSR") adopted by the district court was inconclusive as to his assets and ability to pay and that his counsel informed the district court that Lombardo was involved in bankruptcy proceedings and was hundreds of thousands of dollars in debt.

■ Based on the information in the record, we cannot conclude that the district court clearly erred in imposing a $100,000 fine on Lombardo. The burden is on the defendant to establish his present and future inability to pay. Throughout the district court proceedings, Lombardo was represented by retained counsel. *Cf.* U.S.S.G. § 5E1.2 cmt. (n. 3) (stating that representation by appointed counsel is a significant indicator of present inability to pay a fine). According to the PSR:

> Lombardo completed a personal financial statement indicating that he has no assets and numerous liabilities, which resulted in his filing for bankruptcy in 1992.... Some documentation provided by the defendant revealed that he has debts in excess of $74,000. However, *the defendant has provided no documentation relating to the disposition of his numerous assets.*

(Emphasis added). At his pretrial detention hearing in October 1992, Lombardo's counsel stated that Lombardo owned a $300,000 home in New York. According to the PSR, Lombardo reportedly quit-claimed his inter-

est in the house to his wife in August 1991, immediately after the FBI informed him that he was under investigation. Lombardo presented no documentation of this transfer. There are two possible inferences to draw from this information, and both are bad for Lombardo. If the transfer did not occur, Lombardo has an interest in a $300,000 home. If the transfer did occur, then the district court could have justifiably concluded that Lombardo was trying to hide his assets, a factor that the court was permitted to consider in imposing the fine. *See* U.S.S.G. § 5E1.2(d)(7) *and* cmt. (n. 6). The PSR indicates that Lombardo owned a property in Hollywood, Florida, in which, according to a representation made at the hearing, he had a $50,000 to $60,000 equity interest. The PSR also indicates that Lombardo had an interest in a horse farm purchased in 1988 for $915,-000. Although Lombardo claimed that the property was in foreclosure, he provided no documentation in support of this contention; again, the burden was on Lombardo to establish inability to pay. According to Lombardo's tax returns, Lombardo's adjusted gross income for 1988–1990 was $74,714, $35,904, and $236,423 respectively. He was the sole owner of a thoroughbred race horse business, from which he earned over $100,000 in 1991, and he was a partner in a government securities brokerage. There was sufficient information from which the district court could conclude that the same business sense and acumen that allowed Lombardo to accumulate substantial assets and a comfortable income in the past would continue to serve him in the future.

■ Lombardo provided no documentary support for his claim at sentencing that he was in bankruptcy.[1] Assuming, however, that he was, once the proceedings are complete he will be discharged from most of the debts with which he claims to be saddled, thus making it significantly more likely that he will be able to pay the fine in the future. The bankruptcy code does not provide for the discharge of criminal fines. 11 U.S.C.A. § 523(a)(7) (1993). In sum, the district court did not clearly err in determining that Lombardo has the financial ability to pay a $100,-000 fine.[2]

■ Lombardo next argues that the district court erred by not explicitly discussing the seven factors that the Sentencing Guidelines required it to consider in setting the fine amount. Section 5E1.2(d) provides:

In determining the amount of the fine, the court shall consider:

(1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

**1.** To the contrary, exactly one month after his sentencing, Lombardo filed a motion in the district court to correct the fine. In support of his motion, Lombardo attached an affidavit from a lawyer retained to file his bankruptcy petition. In that affidavit, executed only two days before the motion was filed, the affiant states: "It is my hope to have the petition filed within the next few weeks." Thus, at the time the fine was imposed, no bankruptcy proceedings were in progress.

**2.** This analysis of the information available to the district court applies equally to the imposition of the $400,000 restitution order. The restitution order is all the more reasonable because the district court provided that payments would be made during Lombardo's supervised release, according to an installment schedule to be determined by Lombardo's probation officer. Such an arrangement is expressly approved by the Victim and Witness Protection Act, 18 U.S.C.A. § 3663(f) (1985), *see United States v. Stevens*, 909 F.2d 431, 435 (11th Cir.1990), and will help to ensure that Lombardo will have the ability to pay. The Supreme Court has held that criminal restitution orders are not dischargeable in bankruptcy. *Kelly v. Robinson*, 479 U.S. 36, 53, 107 S.Ct. 353, 362–63, 93 L.Ed.2d 216 (1986). We therefore affirm the $400,000 restitution order.

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense; and

(7) any other pertinent equitable considerations.

We have not yet decided whether, in fixing the amount of a fine under U.S.S.G. § 5E1.2, a district court must make specific findings with respect to each of these factors. The circuits are divided on this issue. Compare *United States v. Tosca,* 18 F.3d 1352, 1354–55 (6th Cir.1994) (holding that specific findings are not required where "it may be fairly inferred [from the record] that the district court considered ... the factors required by law"); *United States v. Savoie,* 985 F.2d 612, 620 (1st Cir.1993) (holding that the failure to make specific findings in open court concerning the defendant's financial condition and prospects did not necessitate reversal); *United States v. Fair,* 979 F.2d 1037, 1040–41 (5th Cir.1992) (holding that specific findings are only required where the district court adopts the presentencing report but then departs from the report's recommendation on fines); *United States v. Washington–Williams,* 945 F.2d 325, 327–28 (10th Cir. 1991) (holding that express findings are not required); *United States v. Marquez,* 941 F.2d 60, 65 (2d Cir.1991) (holding that an explanation of the court's consideration of the factors would be helpful but is not required); *and United States v. Mastropierro,* 931 F.2d 905, 906 (D.C.Cir.1991) ("The guidelines set forth no requirement, however, that the sentencing court make express findings on this question and we decline to create one.") *with United States v. Demes,* 941 F.2d 220, 223 (3d Cir.) (vacating fine because the district court made no finding as to the defendant's ability to pay and therefore the appellate court could not conclude that the district court had considered the issue), *cert. denied,* —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991); *United States v. Masters,* 924 F.2d 1362, 1369 (7th Cir.) (vacating fine because, among other reasons, "the judge made no findings with respect to any of [the] factors and he must do so on remand before imposing a fine"), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2019, 114 L.Ed.2d 105

(1991); *and United States v. Cammisano,* 917 F.2d 1057, 1064 (8th Cir.1990) (holding that district courts "must make specific findings on the record that demonstrate that the factors [set forth in Guidelines § 5E1.2] were considered before a fine may be imposed" (internal quotation omitted, alteration in original)); *cf. United States v. Quan–Guerra,* 929 F.2d 1425, 1426 (9th Cir.1991) ("When the record demonstrates unequivocally that the defendant is indigent, the district court is required to determine whether the defendant has the ability to pay any fine which might be imposed.")

Although we have not yet ruled on this issue under section 5E1.2(d), we have decided the same issue in the analogous context of full restitution orders under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3580(a) (current version at 18 U.S.C.A. § 3664(a) (Supp.1994)). The VWPA provides that:

> The court, in determining whether to order restitution ... and the amount of such restitution, *shall consider* the amount of loss ..., the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

*Id.* (emphasis added). In *United States v. Hairston,* 888 F.2d 1349 (11th Cir.1989), the defendant argued that an order of restitution was invalid "because the district court failed to make specific findings of fact identifying the bases for its restitution order." *Id.* at 1352. We "declined to adopt a rigid rule requiring district courts to make findings of fact whenever they impose an order of restitution under the VWPA," noting that "[t]he plain language of [the VWPA] required only that the district court 'consider' the listed factors ... [and not] that specific findings be made on each factor." *Id.* Had Congress intended to require specific findings it was perfectly capable of doing so. *See, e.g.,* 18 U.S.C.A. § 3663(a)(2) (1985) (requiring the sentencing court to expressly state its reasons when it orders only partial restitution or no restitution at all). We concluded that:

"The decision to assign reasons is committed to the sound discretion of the district court, guided by this singular inquiry—absent an assignment of its reasons, does the record contain sufficient data for the appellate court to perform its mandated review? If the record provides an adequate basis for that review, the court need not assign specific reasons for its decision to order full restitution. If the record is insufficient, reasons must be assigned."

*Id.* at 1353 (quoting *United States v. Patterson,* 837 F.2d 182, 183–84 (5th Cir.1988)).

 For analogous reasons, we hold that the failure to make specific findings on the factors enumerated by the Sentencing Guidelines was not error in this case. While explicit findings would undoubtedly help us to review the district court's imposition of a fine, the Sentencing Guidelines require only that the court *consider* the factors enumerated in section 5E1.2(d). Had the commissioners desired, they could have required express findings on these factors. *See, e.g.,* U.S.S.G. § 5K1.1(a) (1992) (providing that downward departures for substantial assistance shall be made "for reasons stated"); U.S.S.G. § 6A1.1 (1992) (requiring a presentence investigation unless the court finds sufficient information in the record and "explains this finding on the record"). Instead, "satisfactory compliance with § 5E1.2 merely requires that the record reflect the district court's consideration of the pertinent factors prior to imposing the fine." *United States v. Washington–Williams,* 945 F.2d 325, 328 (10th Cir.1991). Therefore, if, as in this case, the record contains sufficient information with respect to the seven factors to permit us to find that the district court did not clearly err in imposing or in setting the amount of the fine, then we will not reverse merely because the district court failed to make specific findings on each of the seven factors.

 There is, however, one aspect of the district court's sentence that we must vacate. The district court ordered that Lombardo pay the $100,000 fine within 30 days and that he make restitution after his release from prison. However, as both parties agree, under the Sentencing Guidelines, "[i]f a defendant is ordered to make restitution and to pay a fine, the court shall order that any money paid by the defendant shall first be applied to satisfy the order of restitution." U.S.S.G. § 5E1.1(c) (1992). We therefore remand for the district court to order that the restitution amount be paid before the fine. Because the defendant will no longer be paying the fine within thirty days, the court may order the restitution payments accelerated if it wishes to do so.

AFFIRMED in part, VACATED in part, and REMANDED with instructions.